## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 03 2017, 6:06 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James P. Buchanan
Buchanan & Buchanan
Lebanon, Indiana

ATTORNEY FOR APPELLEES

Jeffrey A. Boggess
Greencastle, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Peggy L. Sallee,<br>*Appellant,*<br><br>v.<br><br>James L. Barrett and Martha A. Barrett,<br>*Appellees* | March 3, 2017<br><br>Court of Appeals Case No.<br>06A01-1606-PL-1308<br><br>Appeal from the Boone Superior Court<br><br>The Honorable Matthew C. Kincaid, Judge<br><br>Trial Court Cause No.<br>06D01-1603-PL-130 |

**Vaidik, Chief Judge.**

# Case Summary

The trial court granted the defendants' motion for change of venue from Boone County to Putnam County because the defendants resided in Putnam County. The plaintiff appeals, arguing that preferred venue lies in Boone County pursuant to Indiana Trial Rule 75(A)(2) because her complaint contains claims "relating to" land there. Because the plaintiff's complaint concerns only debt, preferred venue does not lie in Boone County pursuant to Trial Rule 75(A)(2). We therefore affirm the trial court.

# Facts and Procedural History

Peggy L. (Barrett) Sallee and James L. Barrett got divorced in January 1977. In July 1977,[1] Peggy executed a quitclaim deed that made James the fee-simple owner of real estate in Boone County (Peggy and James had previously owned the real estate as tenants in common). The quitclaim deed was subject to an agreement between the parties that upon the sale of the real estate, Peggy and James would equally divide the net proceeds. Appellant's App. Vol. II pp. 8-9 (Ex. A attached to complaint). The quitclaim deed was recorded in the Boone County recorder's office.

---

[1] Peggy's complaint and brief state that this event occurred in July 1979; however, the quitclaim deed attached to the complaint says July 1977.

[3]     In May 2013, Peggy asked James to sell the real estate or give her one-half of the appraised value because she was moving to Kentucky. According to an undated "Receipt," James gave Peggy $10,000 "as partial payment of the selling price" due to Peggy "pursuant to the agreement between [Peggy and James] contained in the quitclaim deed recorded . . . in the office of the Recorder of Boone County . . . ." Ex. 1. The Receipt explained that the balance due "shall be determined as the amount of the actual selling price minus [$10,000] paid to her this date, and shall be due at the closing." *Id.*

[4]     On May 7, 2013, Peggy executed a "Release of Equitable Lien" that was recorded in the Boone County recorder's office. Appellant's App. Vol. II pp. 9-10 (Ex. B attached to complaint). In the release, Peggy acknowledged that the "equitable lien and agreement to share proceeds of sale" in favor of her and against James "has been paid and satisfied **in full**" and "said lien and agreement to share proceeds of sale is hereby released this 7th day of May, 2013." *Id.* (emphasis added).

[5]     At some point, James and his new wife, Martha, became owners of the Boone County real estate as tenants by the entireties. They sold the real estate over a year after Peggy executed the release, on September 15, 2014, for $184,000. *Id.* at 13. The net proceeds were $169,040.15. *Id.* Peggy later found out about the sale of the Boone County real estate; she claims that she was not given any proceeds from the sale.

In 2016, Peggy—a Kentucky resident—filed a complaint against James and Martha—Putnam County residents—in Boone County. Peggy alleged three counts: conversion, breach of contract, and failure of consideration. For the third count, Peggy claimed that James' "failure to render the promised performance is a failure of consideration," rendering her May 2013 Release of Equitable Lien "void and of no force and effect." *Id.* at 8. James and Martha moved for change of venue from Boone County to Putnam County because they resided there. *See* Ind. Trial Rule 75(A)(1) (explaining that "preferred venue lies in . . . the county where the greater percentage of individual defendants included in the complaint resides . . ."). Following a hearing, the trial court granted James and Martha's motion for change of venue.

Peggy now pursues this interlocutory appeal as of right. *See* Ind. Appellate Rule 14(A)(8).

# Discussion and Decision

Peggy contends that the trial court erred in transferring venue from Boone County to Putnam County. She claims that preferred venue lies in Boone County pursuant to Trial Rule 75(A)(2) because her complaint contains claims "relating to" land there.

A lawsuit may be commenced in any county in Indiana. Ind. Trial Rule 75(A); *R & D Transp., Inc. v. A.H.*, 859 N.E.2d 332, 333 (Ind. 2006). However, upon the filing of an appropriate motion, the trial court must transfer the case to the

county selected by the party first filing such motion if: (1) the court where the action was initially filed is not a "preferred venue" as defined by Trial Rule 75(A) and (2) the county selected by the party filing the motion is a county of preferred venue. T.R. 75(A). If a lawsuit is filed in a county of preferred venue, the case cannot be transferred to another county, even if that other county is also a county of preferred venue. *R & D*, 859 N.E.2d at 333.

[10] Trial Rule 75(A)(2) provides that preferred venue lies in:

> **the county where the land or some part thereof is located** or the chattels or some part thereof are regularly located or kept, **if the complaint includes a claim** for injuries thereto or **relating to such land** or such chattels, including without limitation claims for recovery of possession or for injuries, to establish use or control, to quiet title or determine any interest, to avoid or set aside conveyances, to foreclose liens, to partition and to assert any matters for which in rem relief is or would be proper[.]

(Emphases added). The Indiana Civil Code Study Commission's intent when creating this subsection was "to broaden the class of local actions allowing suit to be brought in the county where the land is located." *Diesel Constr. Co. v. Cotten*, 634 N.E.2d 1351, 1354 (Ind. Ct. App. 1994) (quotation omitted); *see also R & D*, 859 N.E.2d at 335.

[11] A claim relates to the land under Trial Rule 75(A)(2) if there is a sufficient nexus between the land and the underlying action. *Diesel Constr. Co.*, 634 N.E.2d at 1354. "[T]he nexus test will be affected by such factors as, but not limited to, whether the acts giving rise to liability occurred there, and whether

examination of the site may be necessary to resolve the dispute." *Id.* For example, in *Diesel Construction Co.,* we remanded, noting:

> If the trial court finds that Cotten's **claims concern only a question of debt, the nexus to the land would be too remote to meet T.R. 75(A)(2)**. However, if the breach of the contract is based upon the quality of work performed on the land, for example, such an issue would provide a sufficient nexus to the land to be "related to the land" for purposes of T.R. 75(A)(2).

*Id.* (emphasis added); *see also Skeffington v. Bush*, 846 N.E.2d 761, 763 (Ind. Ct. App. 2006) ("Skeffington's claims are based on the quality of the work performed on the land, *i.e.,* the hydro-seeding by Bush. Although Skeffington seeks to recover monetary damages, her legal theory is based on the alleged poor quality of Bush's work."); *Trs. of Purdue Univ. v. Hagerman Constr. Corp.*, 736 N.E.2d 819, 821 (Ind. Ct. App. 2000) ("[A]lthough Purdue's claims involve Hagerman's asserted breach of contract, this legal theory is based on the alleged poor quality of Hagerman's work [in constructing a building on campus] insofar as such work affected land in Tippecanoe County."), *trans. denied*.

[12] Peggy argues that her claim for "restitution of a security interest in the form of an equitable lien" relates to the Boone County real estate. Appellant's Br. p. 9. We disagree. Peggy does not explain how the "equitable lien" would be enforceable against the real estate as opposed to the proceeds from the sale of the real estate. Instead, Peggy's claims concern merely a question of debt. The real estate is not at issue; indeed, Peggy quitclaimed her interest in the real estate in 1977. The only determinations to be made concern the amount of

money that James allegedly owes Peggy based on their agreement to split the net proceeds whenever he sold the real estate. *Cf. Guzzo v. Goodrich Quality Theaters, Inc.*, 679 N.E.2d 166, 169 (Ind. Ct. App. 1997) ("However, this action does not concern merely a question of debt. Rather, the complaint includes a claim for specific performance, which directly 'relates' to the land because ownership of the land is at issue. If the appellee prevails on its claim, the land would be conveyed to the proper party. This potential for conveyance causes the relief to be in rem. The appellee wants the property, not merely monetary damages." (footnote omitted)), *reh'g denied*, *trans. denied*. Because the claims in Peggy's complaint concern only debt that James allegedly owes her, preferred venue does not lie in Boone County pursuant to Trial Rule 75(A)(2).[2] Accordingly, the trial court did not err in transferring venue from Boone County to Putnam County.

[13] Affirmed.

Bradford, J., and Brown, J., concur.

---

[2] At the change-of-venue hearing, Peggy's attorney discussed adding the current owners of the Boone County real estate to the lawsuit. Tr. p. 14; *see also* Appellant's App. Vol. II p. 21 (proposed amended complaint asking the trial court to "appoint a personal representative to sell the land at public sale . . . ."). But as it now stands, the complaint has not been amended. Appellant's App. Vol. II p. 2 (CCS entry noting that new court can consider whether to allow amended complaint).